## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MON ROS INTERNATIONAL FOR GENERAL TRADING AND CONTRACTING, W.L.L., a limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No._1:17-cv-7365_ |
| ANESTHESIA USA, INC., a corporation, and NEDAL ALWAWI, an individual, | ) ) ) | Jury Trial Demanded |
| Defendants. | ) ) | |

## VERIFIED COMPLAINT FOR UNFAIR COMPETITION, COPYRIGHT INFRINGEMENT, INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS, TRADE LIBEL, DECEPTIVE TRADE PRACTICES, BREACH OF CONTRACT, AND CANCELLATION OF REGISTRATIONS

Plaintiff, Mon Ros International for General Trading and Contracting, W.L.L. ("Plaintiff" or "Monros") brings its verified complaint against Anesthesia USA, Inc., and Nedal Alwawi (collectively, "Defendants"), as follows:

## PARTIES AND JURISDICTION

1.      Monros is a limited liability company organized under the laws of Kuwait, with its principal place of business at Laila Tower, Salem al Mubarak Street, Block 4, Building Number 35, Floor 15, Office 1, in the Salmiya area of Kuwait.

2.      Defendant Anesthesia USA, Inc., is a corporation organized under the laws of the State of Illinois with its principal place of business at 9903 S. 78th Avenue, Hickory Hills, IL 60457.

3.      Defendant Nedal Alwawi ("Alwawi") is an individual residing at 9903 S. 78th Avenue, Hickory Hills, IL 60457.  Alwawi directs and controls the activities of defendant

Anesthesia USA, Inc., complained of herein, and formed that corporation as an Illinois corporation on November 10, 2015.

4. This Court's jurisdiction arises from the fact that this is a civil action brought under the Trademark Laws of the United States, 15 U.S.C. §1051, *et seq.,* and the Copyright Laws of the United States, 17 U.S.C. § 101, *et seq.,* jurisdiction being conferred in accordance with 28 U.S.C. §§ 1331, 1367, and 1338(a) and 15 U.S.C. § 1121. This Court has jurisdiction over all other claims herein in accordance with 28 U.S.C. § 1338(b) and due to the fact that this is a civil action among citizens of different states and countries in which the value of the matter in controversy exceeds seventy-five thousand dollars, exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332.

## PLAINTIFF AND ITS ANESTHESIA CONTACT LENSES

5. Plaintiff is engaged in the development, manufacture, promotion, distribution, and sale of contact lenses and products related thereto. The individual founder and President of Plaintiff, Salem Hussain Abbas Ashkanani, is a doctor who has long practiced ophthalmology in Kuwait and who has for several years been the contact lens distributor in the Middle East for leading multi-national contact lens companies such as Solitica.

6. In or around August 2013, Plaintiff began developing its own contact lens products. Plaintiff adopted the trademark ANESTHESIA to designate its new line of contact lenses, cases, solutions, and related products (collectively referred to as "Products"). Plaintiff adopted and has used with the ANESTHESIA mark several additional sub-brands, including ANESTHESIA USA, ANESTHESIA ANESTHETIC, ANESTHESIA DREAM, ANESTHESIA CELEBRITY, and ANESTHESIA ADDICT, and has adopted names for lens colors such as AMARILLO, MARRON, BRONZE, and GRAY.

7.      Plaintiff contracted exclusively with a contract manufacturer in Korea, i-codi Co., Ltd. ("I-Codi"), to manufacture Plaintiff's Products and related packaging according to its instructions and specifications.  Plaintiff personally met and communicated with I-Codi for several months in 2014 to finalize the initial ANESTHESIA contact lens product and product packaging (collectively referred to as "Initial Product").

8.      Plaintiff first received shipments of the ANESTHESIA Initial Product from I-Codi in August 2014, and commenced selling the Inititial Product, in the Middle East, in November, 2014.

9.      Plaintiff adopted for the sale of its Products a distinctive stylization of its ANESTHESIA mark, as shown below:

*Anesthesia*

10.      Plaintiff also created for its Products distinctive and original packaging artwork, a sample of which is reproduced below.  The copyrights in the drawings and artwork used for the packaging are wholly owned by Plaintiff.



11.      Plaintiff spent a considerable amount of money and effort into developing, establishing and expanding its ANESTHESIA contact lens business, which achieved immediate success in the Gulf and Middle Eastern markets.

3

12.     Plaintiff has sold its ANESTHESIA Products through distributors and retail outlets.  Plaintiff also has established and maintains a presence on social media, including Facebook, Instagram and Snapchat.  Plaintiff's ANESTHESIA Products may be purchased directly from Plaintiff via Plaintiff's social media profile pages and email.

13.     In July, 2014, Plaintiff registered several ANESTHESIA domain names, including anesthesialens.com and anesthesialens.net.  Plaintiff now maintains websites for the promotion and sale of its products at www.anesthesialenses.com and www.monrosintl.com.

14.     On February 20, 2015, Plaintiff and I-Codi gained approval from the United States Food and Drug Administration (FDA) for the sale of Plaintiff's ANESTHESIA contact lenses, under FDA clearance number K143431.

15.     In or around April, 2015, Plaintiff first sold its contact lens products in the United States, to a lens and eyewear distributor in the Los Angeles area.  Plaintiff began receiving orders directly from consumers in the U.S. beginning in May, 2015, via its Instagram profile page and email.  Such orders to Plaintiff have been continuous since May 2015.  For these orders, Plaintiff has directly shipped its products marked with the trademarks ANESTHESIA and ANESTHESIA USA to customers.  Customers also purchase Plaintiff's ANESTHESIA products on the web site www.lens.me.

16.     Plaintiff has continued to develop the ANESTHESIA contact lens business and brand via the Products that comprise the collection of the aforesaid ANESTHESIA DREAM, CELEBRITY, ADDICT and other sub-brands during this time.

**DEFENDANTS AND THEIR SALES OF PLAINTIFF'S PRODUCTS**

17.     In or around July, 2015, Plaintiff hired Raeed Alwawi to work in its Kuwaiti offices.  Shortly thereafter, Raeed Alwawi suggested using his brother, Nedal Alwawi to assist

Plaintiff with the registration and further sale of Plaintiff's products in the United States, as Nedal Alwawi resides in Hickory Hills, Illinois.

18.     Plaintiff sent Nedal Alwawi, who was doing business at the time as "Zain's USA," samples of the ANESTHESIA products in mid-August, 2015.  Dr. Ashkanani met with Nedal Alwawi, as well as his brothers Raeed and Fadi, the following month and discussed the assistance Nedal could provide regarding Plaintiff's expansion in the U.S.  The parties agreed that Alwawi would assist Plaintiff in establishing a U.S-centric website for the promotion and sale of Plaintiff's Products.

19.     Under the agreement, Plaintiff would pay all expenses for the website and related legal work, and Alwawi would receive a sales commission for orders received in the United States through the website.

20.     On October 13, 2015, Defendants secured the domain name anesthesiausa.net on behalf of Plaintiff, to be used for the website the parties agreed would offer Plaintiff's ANESTHESIA Products.  Plaintiff paid for the registration of the domain name and the design of the www.anesthesiausa.net website.

21.     The www.anesthesiausa.net website became operational, and customers began placing orders through the website in March, 2016.  When placed, the order details were forwarded by Alwawi to Plaintiff for fulfillment.  Plaintiff shipped its ANESTHESIA Products directly to the customer and sent Alwawi the Tracking Numbers from the carrier via email. Defendants received the customer payments, which they were then obligated to pay to Plaintiff, less their sales commission.

22.     Up to and following March, 2016, when Defendants commenced receiving orders from the website, Plaintiff continued to sell and offer for sale products to United States residents,

independent of any involvement of Defendants.

## DEFENDANTS' REGISTRATION ACTIVITIES

23.     As part of the parties' sales efforts, on October 16, 2015, Defendants retained an attorney to file an application to register the trademark ANESTHESIA with the United States Patent & Trademark Office, Application Serial No. 86790728, for the following goods:

> Cases for contact lenses; cases for eyeglasses and sunglasses; contact lenses; eye glasses; sunglasses.

24.     Plaintiff paid the expenses for the application to gain registration of the ANESTHESIA trademark and sent samples of its product to Alwawi but was unaware that the application would be filed in the name of "Anesthesia USA," which was identified as an Illinois corporation located at the residence of Nedal Alwawi, 9903 S. 78th Avenue, Hickory Hills, IL 60457.

25.     The attorney of record on the application later filed an amendment, to change the drawing of the mark from ANESTHESIA to ANESTHESIA USA, which the Patent & Trademark Office approved.

26.     In order to sell contact lenses, an entity within the United States needs to receive approval for the product with the FDA.  Defendants had no independent contact lens product that was authorized by the FDA.  Only Plaintiff had received FDA approval at the time of the application.

27.     Alwawi filed Application Serial No. 86790728 based on actual use, including a claim of first use in commerce of March, 2014.  Plaintiff had not yet even met Nedal Alwawi in 2014 and would not do so until over a year after the date of first use alleged in the application. On information and belief, Alwawi relied on Plaintiff's sales in 2014 in stating the date of first use of the product.

28.     The specimen of use of the mark filed with Defendants' application consisted of photographs of Plaintiff's contact lenses and packaging.  They displayed the same stylized form of the ANESTHESIA mark used by Plaintiff, as well as a manufacturing lot number identifying the product as one manufactured by I-Codi on behalf of Plaintiff.  The packaging in the photographs displayed the copyrighted drawing and artwork Plaintiff uses for its product.  The specimen of use Defendants claimed constituted the product of "Anesthesia USA" is partially reproduced below:

 

29.     On the filing date of Application Serial No. 86790728, there was no entity called "Anesthesia USA."  The application nonetheless identified the applicant as an Illinois corporation.  Alwawi formed this corporation, called "Anesthesia USA, Inc.," on November 10, 2015, after he filed Application Serial No. 86790728.

30.     When Plaintiff discovered the title of the application was in the name of "Anesthesia USA," Dr. Ashkanani informed Raeed Alwawi it should be in the name of Monros.  Raeed repeatedly assured Plaintiff that his brother would be assigning the application to Plaintiff.

31.     The United States Patent and Trademark Office issued the registration of the ANESTHESIA USA trademark for contact lens products on June 7, 2016, Registration No. 4972887.

32.     On October 17, 2015, a day after filing Application Serial No. 86790728, counsel for Defendants, again identifying the applicant as "Anesthesia USA," an Illinois corporation, filed an additional application to register ANESTHESIA, as a service mark for the following: on-line retail store services featuring contact lenses, eyeglasses, sunglasses and cases for contact lenses, eyeglasses and sunglasses.  The application was based on a bona fide intent to use the service mark, Application Serial No. 86791111.  As with its earlier application, Defendants under penalty of perjury declared that it was entitled to use the ANESTHESIA mark, believed they were the owner of the mark; and no other person had the rights to use the mark.

33.     As with its earlier application, Defendants also filed an amendment to its application, to change the drawing of the mark from ANESTHESIA to ANESTHESIA USA.

34.     On May 19, 2016, Defendants filed a statement of use of the ANESTHESIA mark, claiming use by Anesthesia USA since April, 2014, and submitting as specimens of use web site print-outs and a portion of a catalogue from a trade show held in the United Arab Emirates.  As with the application to register for contact lenses, the specimens displayed a copy of the ANESTHESIA mark in the stylization created and used by Plaintiff.  The specimens also pictured, without authorization, copyrighted photographs paid for and used by Plaintiff in its promotional materials.

35.     The registration of the ANESTHESIA USA service mark issued on July 19, 2016, Registration No. 5005118.

36.     Defendants sent Plaintiff a request for reimbursement for Application Serial No. 86791111, and Plaintiff paid the expenses after it was filed.

**DEFENDANTS' USURPATION OF PLAINTIFF'S TRADE IDENTITY**

37.     Despite receiving payments for orders that Plaintiff shipped directly to customers, Defendants failed to pay Plaintiff, and currently owes Plaintiff over $21,000 for completed orders.  Defendants also failed to deliver payment to Plaintiff regarding a large order placed by a customer after receiving payment from the customer, and Plaintiff had to ship to the customer Products with a value of over $72,000 without compensation.

38.     Plaintiff again requested confirmation that the registrations of ANESTHESIA USA would be transferred to Monros.  In response, Alwawi stated Monros would be allowed to retain its name only if Monros appointed him to its board as a 50% shareholder for managing U.S. operations.

39.     Accordingly, the relationship between the parties deteriorated and effectively terminated in or around January, 2017.  Raeed Alwawi stopped appearing for work at Plaintiff's offices and was officially terminated from Plaintiff's employ in January, 2017.

40.     Defendants posted a notice in December, 2016, on the www.anesthesiausa.net website announcing it no longer was operating as an independent sales contractor for Plaintiff: "Warning Alert: We are No Longer associated with Monros International.  We had elected to cancel Our Distribution agreement for Middle east with them On Dec 1st 2016."  Plaintiff, in fact, had never operated as a distributor for Defendants in the Middle East.

41.     Plaintiff owns a registration of the ANESTHESIA mark issued by the Trademark Office of Kuwait, Registration No. 139279, with a filing date of August 20, 2014, and a further registration of the mark issued by the Trademark Office of Kuwait, Registration No. 129685, with a filing date of April 29, 2015.  Plaintiff also has filed applications to register the mark in several countries, which are now pending.  Conflicts in some countries have arisen, however,

because Defendants had already filed applications in these countries to register the ANESTHESIA USA mark. The applications were filed under the Madrid Protocol, based on the aforesaid U.S. registrations of the mark issued in the name of "Anesthesia USA."

42.     On information and belief, Defendants misappropriated the manufacturing and marketing plans of Plaintiff and have arranged the manufacture of their own contact lenses by the Korean manufacturer G & G Contact Lens. On information and belief, they have done so with the assistance of Raeed Alwawi while he was a manager employed by Plaintiff.

43.     Defendants have begun offering for sale counterfeit and inferior ANESTHESIA contact lens products in Europe and the Middle East that are not provided by Plaintiff, in packaging copying Plaintiff's trade dress and copyrighted artwork, as well as the exact same stylization of its ANESTHESIA mark, and plan on selling these products in the United States. Set forth below are photographs of products Defendants are currently selling, taken at a store in Saudi Arabia, and stating they are manufactured "for Anesthesia USA, Inc, Hickory Hills, IL":

 

44.     Defendants' copying has extended to the use of the same sub-brand names of Plaintiff, including DREAM, ADDICT, and ANESTHETIC, and designation of colors, such as AMARILLO, MARRON, and BRONZE.

45.     Defendants have begun sending, from their location in Hickory Hills, Illinois, email correspondence to Plaintiff's distributor and retail customers, claiming that these clients of Plaintiff are "selling fake Anesthesia contact lens" and demanding the removal of Plaintiff's

products from their stores.  Defendants also have sent a letter stating that Anesthesia USA, Inc., is the owner of the ANESTHESIA trademark and "canceled the rights of distribution of Monros international company in Kuwait on December 1st, 2016, and it no longer represents our trademarks."  It also states that it would "protect our trademarks against copying, or the false goods."  Attached as Plaintiff's Exhibits 1-2 are copies of the aforesaid email correspondence and letter, with translation, sent to Plaintiff's clients.

46.     The website www.anesthesiausa.net was also never turned over to Plaintiff. While it is currently not operational, the web site displays the following message, with a reproduction of Plaintiff's ANESTHESIA logo:



47.     Defendants also announced their intention to attend a major annual contact lens trade show, the Vision-X Dubai Conference, beginning on October 17, 2017, as "Anesthesia USA."  Plaintiff is also attending the same trade show and discovered this when preparing to attend the conference.

## COUNT I:
## DECLARATORY JUDGMENT ON
## OWNERSHIP OF ANESTHESIA TRADEMARK

48.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 47 herein.

49.     Defendants, by virtue of their registration and retention of registrations of the ANESTHESIA mark in the name of "Anesthesia USA," retention of the www.anesthesiausa.net name and website, and contact with members of the trade claiming Plaintiff's products are

unlawful, have directly questioned the ownership of Plaintiff in its ANESTHESIA trademarks and ability to offer for sale Plaintiff's Products.

50.     Plaintiff and Defendants recognized, prior to any filing of the aforesaid applications to register ANESTHESIA, that Plaintiff was the source of ANESTHESIA products and would distribute the products sold in the United States and elsewhere.  Defendants only acted as independent sales contractors or facilitators receiving a commission based on sales originating from the www.anesthesiausa.net website and have had no responsibility over the nature or quality of the goods or their packaging.

51.     Plaintiff used in interstate commerce of the United States, including commerce within the state of Illinois, the marks ANESTHESIA and ANESTHESIA USA well before Defendants used those marks and prior to Defendants' filing of trademark applications for the marks in the United States Patent & Trademark Office.

52.     By virtue of its aforesaid prior use and sales in interstate commerce, Plaintiff is the owner of the ANESTHESIA trademark in the United States.

53.     Plaintiff did not assign its ANESTHESIA mark to Defendants, and Plaintiff did not provide any consent to Defendants to claim ownership in the ANESTHESIA trademark or registrations thereof in the United States.

54.     Plaintiff  requests that the Court issue a declaratory judgment that Plaintiff is the exclusive owner in the United States of the trademark ANESTHESIA used for contact lens products and related products.

## COUNT II:  UNFAIR COMPETITION
## FROM USE OF ANESTHESIA TRADEMARKS

55.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 herein.

56.     Defendants' unauthorized usage of Plaintiff's ANESTHESIA trademark and ANESTHESIA USA name and mark has caused and is likely to continue to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of Plaintiff's services, in that the general public, trade, and others are likely to believe that Defendants' products emanate from Plaintiff or are legitimately connected with, approved by, or related to Plaintiff. Such acts constitute unfair competition with Plaintiff under the common law and results in the unjust enrichment of Defendants.

57.     Defendants' aforesaid usage of Plaintiff's ANESTHESIA marks in their name and as marks for their goods and services constitutes the use of a false designation of origin and false representation of Defendants and their business and products as being legitimately affiliated, connected, or associated with Plaintiff, in violation of Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(a).

58.     Defendants' aforesaid acts greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court; wherefore, Plaintiff is without an adequate remedy at law.

**COUNT III:**
**UNFAIR COMPETITION FROM USE OF ANESTHESIA TRADE DRESS**

59.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 herein.

60.     Since April, 2015, Plaintiff has used in interstate commerce of the United States, including commerce within the state of Illinois, its aforesaid inherently distinctive ANESTHESIA packaging trade dress.

61.     By virtue of its aforesaid use and sales in interstate commerce, Plaintiff is the owner of the ANESTHESIA packaging trade dress in the United States.

13

62. Defendants' unauthorized usage of Plaintiff's ANESTHESIA packaging trade dress is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of Defendants' products, in that the general public, trade, and others are likely to believe that Defendants' products emanate from Plaintiff or are legitimately connected with, approved by, or related to Plaintiff. Such acts constitute unfair competition with Plaintiff under the common law and results in the unjust enrichment of Defendants.

63. Defendants' aforesaid usage of Plaintiff's ANESTHESIA packaging trade dress for their goods and services constitutes the use of a false designation of origin and false representation of Defendants and their business and products as being legitimately affiliated, connected, or associated with Plaintiff, in violation of Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(a).

64. Defendants' aforesaid acts greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court; wherefore, Plaintiff is without an adequate remedy at law.

**COUNT IV:**
**COPYRIGHT INFRINGEMENT**

65. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 47 herein.

66. Plaintiff's aforesaid copyrighted packaging artwork was created and first published outside the United States, as "foreign works." The requirement to register the copyrights in works for instituting an infringement suit does not apply to such foreign works under 17 U.S.C. § 411.

14

67.    Plaintiff nonetheless has applied to register the copyrights in its aforesaid packaging artwork with the United States Copyright Office, on October 12, 2017.  Plaintiff's applications are pending.

68.    Defendants' aforesaid reproduction, display and distribution of Plaintiff''s packaging artwork constitutes copyright infringement, under 17 U.S.C. § 501.

69.    Defendants' aforesaid acts greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court; wherefore, Plaintiff is without an adequate remedy at law.

## COUNT V:
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

70.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 69 herein.

71.    Plaintiff has valid business relationships with its retail and wholesale clients and customers and has supplied such clients and customers with its ANESTHESIA Products for sale to consumers.

72.    Defendants have known about Plaintiff's business relationships with its clients and have sent the aforesaid letters and email correspondence to them with false and disparaging claims concerning Plaintiff's Products, together with threats against said clients' stocking and sale of the Products, knowingly and intentionally.

73.    Defendants have intentionally interfered with Plaintiff's business relationships, causing Plaintiff to expend great time and resources addressing concerns and further causing breaches of said business relationships.

74.    Plaintiff has suffered damages as a result of Defendants' tortious interference with Plaintiff's business relationships.

75.     Defendants' aforesaid acts greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court; wherefore, Plaintiff is without an adequate remedy at law.

## COUNT VI:
## TRADE LIBEL

76.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 75 herein.

77.     Defendants' aforesaid letters and email correspondence sent to Plaintiff's clients and members of the trade are false and defamatory and have caused harm to Plaintiff's reputation in the industry.

78.     Defendants' aforesaid letters and email correspondence constitute trade libel under the common law.

79.     Defendants' aforesaid acts greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court; wherefore, Plaintiff is without an adequate remedy at law.

## COUNT VII:
## DECEPTIVE TRADE AND BUSINESS PRACTICES

80.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 77 herein.

81.     Defendants' aforesaid acts violate the Uniform Deceptive Trade Practices Act of the state of Illinois, 815 ILCS 510/1--510/7, and similar laws in the states where Defendants have sold and promoted their products.

82.     Defendants' aforesaid acts violate the Consumer Fraud and Deceptive Business Practices Act of the state of Illinois, 815 ILCS 505/1--505/12 and similar laws in the states where defendants have sold and promoted its tours and travel services.

83.     Defendants' aforesaid acts greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court; wherefore, Plaintiff is without an adequate remedy at law.

**COUNT VIII:**
**BREACH OF CONTRACT**

84.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 herein.

85.     Plaintiff and Defendants, through Alwawi, agreed, prior to the filing of the aforesaid applications to register ANESTHESIA, that Plaintiff was the owner of the ANESTHESIA trademark, and Defendants would not claim ownership of the trademark or otherwise indicate it was the source of the product or the online retail services related thereto.

86.     Plaintiff paid expenses to Alwawi in excess of $16,000 for applying to register the ANESTHESIA mark in the United States and setting up the www.anesthesiausa.net website. Plaintiff did so in reliance on the agreement and recognition by Defendants that Plaintiff retained ownership of the ANESTHESIA mark.  Plaintiff also shipped product to customers in the United States in reliance on the agreement that Defendants would pay proceeds less commission from the sale to Plaintiff, which resulted in losses to Plaintiff of close to $100,000.

87.     Defendants breached the agreement between the parties by claiming exclusive ownership over the ANESTHESIA trademark and refusing to recognize ownership in Plaintiff.

88.     Defendants breached the agreement between the parties by their failure to pay Plaintiff the proceeds from sales in the United States of Plaintiff's Products.

89.     Defendants' aforesaid claim of ownership of the ANESTHESIA trademark, registration of U.S. registrations of said marks in their name, use of the www.anesthesiausa.net web site for their own purposes, failure to pay Plaintiff for its shipment of orders, and failure to deliver product to customers each breached the parties' sales agreement.

**COUNT IX:**
**CANCELLATION OF REGISTRATION NOS. 4972887 AND 5005118:**
**LACK OF OWNERSHIP OF THE ANESTHESIA TRADEMARK**

90.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 and 85 through 89 herein.

91.     This Court has jurisdiction and the power to cancel Registration Nos. 4972887 and 5005118 that are currently in in the name of Defendant "Anesthesia USA" pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119.

92.     The registration of ANESTHESIA USA, Registration No. 4972887 resulted from the filing of Application No. 86790728.  The registration of ANESTHESIA USA, Registration No. 5005118, resulted from the filing of Application No. 86791111.

93.     Defendants' aforesaid Application Nos. 86790728 and 86791111 were void *ab initio* because Defendants were not and are not the owners of the mark.

94.     Registration by Defendants of the ANESTHESIA mark is damaging to Plaintiff, and the registrations thereof should be cancelled for lack of ownership of the mark.

**COUNT X:**
**CANCELLATION OF REGISTRATION NOS. 4972887 AND 5005118:**
**LIKELIHOOD OF CONFUSION**

95.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 and 85 through 92 herein.

96.     Defendants' usage of the ANESTHESIA USA mark as set forth in Registration Nos. 4972887 and 5005118 is likely to cause confusion, mistake or deception as to the source of origin, sponsorship, or approval of Defendants' contact lens products and online retail services in that persons are likely to believe that Defendants are Plaintiff or an authorized licensee of Plaintiff and their products and services are legitimately connected with, approved by, or related to Plaintiff and its ANESTHESIA and ANESTHESIA USA marks and products and services.

97.     Registration by Defendants of the ANESTHESIA mark is damaging to Plaintiff, and the registrations thereof should be cancelled, pursuant to 15 U.S.C. § 1052(d).

**COUNT XI:**
**CANCELLATION OF DEFENDANTS'**
**REGISTRATION NO. 4972887:  LACK OF USE**

98.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 and 85 through 92 herein.

99.     Defendants were not using in interstate commerce the mark ANESTHESIA USA for contact lenses and related products on October 16, 2015, the date Alwawi filed Application Serial No. 86790728 to register the mark based on actual use.  Defendants' Application Serial No. 86790728 was therefore void *ab initio* for failure to use the mark.

100.     The only use of the mark for contact lens products was by Plaintiff, through direct sales to consumers.  Additionally, such use did not include eyeglasses and sunglasses, as alleged by Alwawi in the application.

101.     Defendants' Application No. 86790728 was void *ab initio* because Defendants had not used the mark.

102.    Registration by Defendants of the ANESTHESIA mark is damaging to Plaintiff, and Registration No. 4972887 should be cancelled, due to lack of use of the mark by Defendants when filing their application based on use.

**COUNT XII:**
**CANCELLATION OF DEFENDANTS'**
**REGISTRATION NO. 4972887:  FRAUD ON THE PTO**

103.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 101 herein.

104.    Defendants falsely stated in Application Serial No. 86790728 that the applicant was an Illinois corporation; the applicant was the owner of the ANESTHESIA and ANESTHESIA USA trademarks; it knew of no other firm or individual with trademark rights in the ANESTHESIA mark; it was using the mark in connection with goods originating with the applicant that were actually sold or distributed in interstate commerce; and the specimen submitted with the application represented Defendants' product and represented use by Defendants of the ANESTHESIA USA mark on packaging and products.

105.    Defendants made the aforesaid false statements in their Application Serial No. 86790728 both intentionally and knowingly.

106.    Defendants' aforesaid false statements were material misrepresentations that resulted in the issuance of Registration No. 4972887.

107.    Defendants' aforesaid material and intentionally false representations constitute fraud on the Patent & Trademark Office in obtaining Registration No. 4972887.

108.    Registration by Defendants of the ANESTHESIA mark is damaging to Plaintiff, and Registration No. 4972887 should be cancelled, for fraud in its procurement.

**COUNT XIII:**
**CANCELLATION OF DEFENDANTS' REGISTRATION NO. 5005118**

109.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 101 herein.

110.    Defendants falsely stated in Application Serial No. 86791111 that "Anesthesia USA" was the owner of the ANESTHESIA and ANESTHESIA USA marks; knew of no other firm or individual with trademark rights in the ANESTHESIA mark; and had a bona fide intent to use the mark ANESTHESIA USA.

111.    Defendant made the aforesaid false statements in its Application Serial No. 86790728 both intentionally and knowingly.

112.    Defendant's aforesaid false statements were each material misrepresentations that resulted in the issuance of Registration No. 5005118.

113.    Registration by Defendants of the ANESTHESIA mark is damaging to Plaintiff, and Registration No. 5005118 should be cancelled, for fraud in its procurement.

**COUNT XIV:**
**CYBERSQUATTING**

114.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 58 herein.

115.    Defendants registered the domain name anesthesiausa.net with full knowledge of Plaintiff's long and prior use of its ANESTHESIA marks and with the bad faith intent to profit from Plaintiff's goodwill in its marks.

116.    Defendants' aforesaid registration and use of their domain name anesthesiausa.net violates the Anti-cybersquatting Consumer Protection Act, Section 43(d) of the United States Trademark Act, 15 U.S.C. §1125(d).

117.    Defendants' aforesaid acts greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court; wherefore, Plaintiff is without an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1.    Defendants and their agents, servants, employees, attorneys, and all others holding by, through, or under Defendants, or in active concert or participation with Defendants, be enjoined and restrained during the pendency of this action, and permanently thereafter, from:

(a)    using the designations ANESTHESIA, ANESTHESIA USA, and any colorable imitation or simulation thereof, in whole or in part, in Defendants' trade name or as marks to designate their products or services;

(b)    using the designations ANESTHETIC, DREAM, CELEBRITY, and ADDICT and the color names AMARILLO, MARRON, and BRONZE to designate their products;

(c)    using or maintaining registrations of the domain name "anesthesiausa.net" or any other domain name containing the mark ANESTHESIA or colorable imitations thereof;

(d)    using, reproducing, or distributing Plaintiff's packaging trade dress and artwork or trade dress and artwork substantially similar thereto;

(e)    doing any other act or thing likely to induce the belief that Defendants' products or services are in any way connected with or authorized by

Plaintiff or its ANESTHESIA products or that Defendants' products and business are sponsored or approved by Plaintiff.

2.      The Court issue a declaratory judgment that  Plaintiff owns all rights in the trademarks ANESTHESIA and ANESTHESIA USA and the trade dress rights and copyrights in the packaging designs and artwork used in conjunction with Plaintiff's ANESTHESIA Products.

3.      Defendants' United States Registration Nos. 4972887 and 5005118 be cancelled, pursuant to 15 U.S.C. §1119.

4.      Defendants be ordered to transfer to Plaintiff its registration of the domain name "anesthesiausa.net" and any other domain names in its possession that use Plaintiff's ANESTHESIA mark.

5.      Defendants be required to deliver up for destruction all products, signs, invoices, prints, advertisements, press releases, and other material in their possession or control bearing the names and marks ANESTHESIA, ANESTHESIA USA, DREAM, ADDICT, ANESTHETIC, and CELEBRITY or otherwise bearing Plaintiff's marks or colorable imitations thereof, in accordance with 15 U.S.C. § 1118.

6.      Defendants be required to pay to Plaintiff all damages Plaintiff has suffered by reason of Defendants' unlawful use of Plaintiff's mark and copyrighted artwork and trade dress, in accordance with 15 U.S.C. § 1117.

7.      Defendants be required to account for and pay to Plaintiff all profits wrongfully derived by Defendants through their infringement of Plaintiff's rights in its ANESTHESIA marks.

8.     Defendants be required to pay Plaintiff three times Defendants' profits or Plaintiff's damages, whichever is greater, for its unfair competition, pursuant to 15 U.S.C. §1117.

9.     Defendants be required to pay to Plaintiff punitive damages in an amount to be determined by this Court for Defendants' deliberate and willful unfair competition, trade libel and interference with business relationships.

10.     Defendants be required to pay to Plaintiff damages for their breaches of the parties' agreement.

11.     Defendants be required to pay to Plaintiff the costs of this action and Plaintiff's reasonable attorneys' fees and costs incurred herein, pursuant to 15 U.S.C. § 1117(a).

12.     Defendants be required to file with this Court and serve on Plaintiff a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by this Court.

13.     Plaintiff have such other and further relief as this Court deems just and equitable.

## Jury Demand

Plaintiff demands a trial by jury on all counts.

                    Respectfully submitted,

                    YOUNG, BASILE, HANLON & MACFARLANE

                    By:  /s/Nicholas Kurk/
                         Thomas P. Arden
                         Bar Reg. No. 06191474
                         Nicholas Kurk
                         Bar Reg. No. 6292133
                         150 N. Wacker Drive
                         Suite 1450
                         Chicago, Illinois 60606
                         312-445-9322
                    Attorneys for Plaintiff

## VERIFICATION

I, Dr. Salem Hussain Abbas Ashkanani, Founder & President of Mon Ros International for General Trading and Contracting, W.L.L., have read the foregoing Verified Complaint and hereby declare under penalty of perjury and in accordance with 28 U.S.C. §1746, that the facts alleged in the foregoing Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and to such matters the undersigned declares as aforesaid that he verily believes the same to be true.

Executed this 11 day of October, 2017, in the Salmiya area of Kuwait.

Dr. Salem Hussain Abbas Ashkanani

25