UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MON ROS INTERNATIONAL FOR GENERAL TRADING AND CONTRACTING, W.L.L., <br><br> Plaintiff, <br><br> v. <br><br> ANESTHESIA USA, INC., et al., <br><br> Defendants. | No. 17 C 7365 <br><br> Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Mon Ros International for General Trading and Contracting, W.L.L. ("Plaintiff") brought this trademark infringement action against Anesthesia USA, Inc. and Nedal Alwawi ("Alwawi") (collectively, "Defendants"). (R. 1, Compl.) The Court first entered a temporary restraining order ("TRO") and then a final judgment against Defendants, both of which, among other things, enjoined Defendants from using Plaintiff's trademarks to sell or promote products within the United States. (R. 21, TRO at 3-4; R. 79, Final J. at 8-10.) Plaintiff now moves to hold Defendants in contempt for failing to satisfy the monetary judgment in this case and for continuing to infringe Plaintiff's trademarks in violation of the Court's orders. (R. 110, Mot. at 2-9.) For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff is a limited liability company organized under the laws of Kuwait that sells contact lenses in packages bearing the trademark "ANESTHESIA" in stylized form. (R. 79, Final J. at 1-3.) On October 12, 2017, Plaintiff brought this action against Defendants for infringing its ANESTHESIA trademarks. (R. 1, Compl. ¶¶ 48-117.) On October 16, 2017, after considering

the evidence submitted by the parties, this Court entered a TRO that enjoined Defendants from using Plaintiff's ANESTHESIA trademarks within the United States and from holding themselves out as the owner of Plaintiff's trademarks. (R. 21, TRO at 3-4.)

On November 2, 2017, while the Court's TRO was in effect, Alwawi disseminated a letter stating that he was the owner of the ANESTHESIA brand throughout the world and that Plaintiff was selling counterfeit ANESTHESIA products. (R. 110, Jamal Decl. at 2.) On January 2, 2018—also while the TRO was still in effect, (R. 27, Min. Entry; R. 78, Min. Entry)—Defendants sold counterfeit ANESTHESIA products to a business by the name of "Frifay," which is a California corporation located in Beverly Hills. (R. 102-1 at 11, Jan. 2, 2018, Invoice; R. 102-2 at 2, Frifay Articles of Incorporation.) A purchase order issued by Frifay on December 20, 2017, reflects Defendants' sale of counterfeit ANESTHESIA products and notes that the products will be shipped to Iraq "via FedEx." (R. 102-1 at 15, Frifay Purchase Order.) On December 22, 2017, Frifay wired Defendants $30,350 for the counterfeit ANESTHESIA products. (R. 102-1 at 5, Dec. 2017 Bank Statement.) Defendants issued an invoice that further documents this transaction. The invoice is issued to "Frifay" for $30,350, and notes that that the amount had been paid. (R. 102-1 at 11, Jan. 2, 2018, Invoice.) Defendants had also received another wire from Frifay several months earlier on August 23, 2017, for $26,442.00. (R. 102-1 at 4, Aug. 2017 Bank Statement.)

In addition to this California transaction, Defendants sold counterfeit ANESTHESIA products to another individual in the United States while the TRO was in effect. (R. 102-1 at 9, Dec. 11, 2017, Invoice.) Specifically, an individual by the name of Antonio De La Torre with an address in El Paso, Texas, placed an order with Defendants for $1,226.00 for his retail business located in Mexico. (*Id.*) Prior to these sales in the United States, Defendants staunchly and

repeatedly represented to this Court in October 2017 that they had no plans to sell counterfeit ANESTHESIA products in the United States. (R. 19, Resp. to Mot. for TRO at 1-2; R. 26, Oct. 16, 2017, Tr. at 6.)

On March 21, 2018, after considering the evidence submitted in this case, the Court entered a final judgment in Plaintiff's favor. (R. 79, Final J.) Among other things, the judgment awarded Plaintiff $8,262,932 in damages, $341,363.25 in attorneys' fees, and $4,676.53 in costs. (*Id.* at 8.) The judgment also permanently enjoined Defendants from selling counterfeit ANESTHESIA products in the United States and from representing within the United States that they are the owner of the ANESTHESIA trademarks or products. (*Id.* at 9-10.) Defendants do not dispute that they have failed to pay Plaintiff any money to satisfy the judgment. (R. 105, Resp. at 1.) Defendants, however, have received hundreds of thousands of dollars in profits from the sale of counterfeit ANESTHESIA products, and they had been operating a business for a contact lens product marketed as "BEAUTEOUS," which costed Defendants at least tens of thousands of dollars to operate. (R. 98-4, Defs.' Interr. Resps. at 5-6; R. 63-6 at 2-3, June 18-19, Emails and Invoices (Defendants purchasing 14,000 orders of "Beauteous" contact lenses for $30,380).) Plaintiff maintains that Defendants have made more money from their sales than what is typical because they have not reported in their federal tax returns their income from the sale of contact lenses, which would have resulted in Defendants avoiding federal taxes on such income. (R. 108, Reply at 7); *compare* (R. 109-7 at 1-2, Alwawi 2017 Fed. Tax Return (reporting that for 2017, Alwawi, through Defendant Anesthesia USA, Inc., generated $22,500 dollars in income and gross profit with only $1,326 in expenses)), *with* (R. 98-4, Defs.' Interr. Resps. at 5-6.)

The Court's final judgment prohibits Defendants from selling within the United States contact lenses bearing Plaintiff's AMARILLO or AZURE trademarks. (R. 79, Final J. at 9.)

3

After the Court entered the final judgment, Defendants sold contact lenses under the BEAUTEOUS brand name but used Plaintiff's other trademarks within the ANESTHESIA brand, such as the AMARILLO and AZURE trademarks, and websites marketing Defendants' BEAUTEUOS contact lenses allow United States customers to purchase them. (*Id.*; R. 102-3, Beauteouslenses.com at 3, 12; R. 102-4 at 5-11, Fekman.com; R. 112, Ashkanani Decl. at 2-4.)

Plaintiff maintains that Alwawi transferred his BEAUTEOUS brand to a Saudi Arabian company in exchange for a $600,000 payment to his brother, Mohammed Alwawi, in order to evade creditors.[1] (R. 108, Reply at 6; R. 113, Raad Decl.) In support, Plaintiff provides evidence showing that Alwawi's brother transferred the BEAUTEOUS trademarks to the Saudi Arabian company in December 2017. (R. 109-2, BN Trading, Inc. Trademark Assignment at 2-4; R. 109-3, Anesthesia USA, Inc. Trademark Assignment at 2-3.) In addition to their other business exploits, Defendants have expended significant amounts of money to operate a booth as a "Gold Sponsor" at a contact lens trade show in Dubai, United Arab Emirates. (R. 102, Kurk Decl. at 3.)

## PROCEDURAL HISTORY

Plaintiff brought this action against Defendants on October 12, 2017. (R. 1, Compl.) The following day, Plaintiff filed a motion for TRO and preliminary injunction asking this Court to enjoin Defendants from claiming ownership in or promoting ANESTHESIA products. (R. 7, Mot. for TRO at 1-2; R. 8, Mot. for Prelim. Inj. at 1-2.) On October 16, 2017, the Court granted Plaintiff's motion for TRO and entered an order enjoining Defendants from claiming ownership in or promoting ANESTHESIA products for sale in the United States. (R. 21, TRO at 3-4.) On

---

[1] Plaintiff relies on the declaration of Ahmad Abo Raad as evidence of this transfer and payment of $600,000 to Alwawi's brother. (R. 108, Reply at 6.) Raad's declaration, however, is based on hearsay statements since Raad declares that "Fayez Al Mohia . . . informed me that his company had just recently purchased the entire BEAUTEOUS business from [Alwawi] for $600,000 and that the money was transferred to an account in the name of [Alwawi's] brother[.]" (R. 113, Raad Decl. at 2-3.)

4

October 25, 2017, the Court ruled that, by agreement of the parties, the TRO would remain in effect until the Court's hearing on Plaintiff's motion for preliminary injunction. (R. 27, Min. Order.)

On December 12, 2017, Defendants' initial counsel filed a motion to withdraw from the case because Defendants made a number of false representations to the Court in their response to Plaintiff's court filings. (R. 39, Mot. to Withdraw.) After notifying the Court that Defendants had submitted falsified documents, Defendants' counsel made a record of Defendants' false representations, and the Court then granted the motion to withdraw on December 27, 2017.[2] (R. 46, Corrected Notice at 1-2; R. 50, Min. Entry.) On the same day, the Court sanctioned Defendants for submitting falsified documents by striking those documents from the record and entering a default judgment against Defendants, with the caveat that it would issue a final, appealable judgment after making specific findings on injunctive relief, damages, and attorneys' fees. (R. 51, Min. Entry.)

Plaintiff then filed petitions for attorneys' fees, costs, damages, and injunctive relief, (R. 58, Mot.; R. 60, Mot.), and Defendants secured new counsel to represent them in these proceedings. (R. 67, Attorney Appearance; R. 70, Resp.) Plaintiff also filed a motion for contempt on March 15, 2018, which argues that Defendants violated the Court's TRO. (R. 74, Mot.) On March 20, 2018, the Court granted Plaintiff's requests for damages, fees, costs, and injunctive relief and entered an order of final judgment the following day. (R. 76, Min. Entry; R. 79, Final J.) The final judgment, among other things, orders Defendants to pay Plaintiff $8,262,932 in damages, $341,363.25 in attorneys' fees, and $4,676.53 in costs, and it also permanently enjoins Defendants from selling or promoting counterfeit ANESTHESIA products

---

[2] The Court commends Defendants' prior attorneys for their candor and adherence to ethical obligations.

5

or using ANESTHESIA trademarks in the United States, including Plaintiff's AZURE and AMARILLO trademarks. (*Id.* at 8-10.) Concurrent with its entry of final judgment, the Court vacated the TRO. (R. 78, Order.)

On November 15, 2018, Plaintiff filed the present motion to hold Defendants in contempt, which expands on its motion for contempt filed on March 15, 2018. (R. 101, Mot.) Plaintiff argues that Defendants should be held in contempt because they violated the TRO by holding themselves out as the owner of Plaintiff's trademarks and by selling counterfeit ANESTHESIA products. (*Id.* at 2-4.) Plaintiff also argues that a finding of contempt is proper because Defendants continue to violate the Court's final judgment with their sale of BEAUTEOUS contact lenses, and because Defendants have failed to pay Plaintiff damages despite reaping significant profits from sales of counterfeit ANESTHESIA products and BEAUTEOUS contact lenses. (*Id.* at 4-9; *see also* R. 79, Final J. at 8-10.) Plaintiff requests that the Court issue a warrant for Alwawi's arrest or order Alwawi to surrender his passport, and that the Court require Defendants to immediately pay Plaintiff $500,000 or show why they cannot pay that amount. (R. 101, Mot. at 9.) Plaintiff also asks that the Court order Defendants to undergo an accounting of all their business activity over the past two years given their failure to provide adequate information about their assets, and that the Court refer Defendants for criminal prosecution. (*Id.*; *see also* R. 108, Reply at 8.)

In response, Defendants argue that their products have been manufactured outside the United States and shipped to locations outside the United States. (R. 106, Resp. at 1-2.) Thus, in Defendants' view, they never violated the Court's orders because their counterfeit products were never physically present in the United States. (*Id.* at 2.) Defendants maintain that while they have not satisfied the monetary judgment due to an inability to pay, they have ceased conducting any

6

business using Plaintiff's trademarks and have complied with all discovery obligations. (*Id.* at 2.) Defendants also represent that they are willing to have Plaintiff examine them so that Plaintiff can assure itself that Defendants are complying with the Court's orders. (*Id.*) Finally, Defendants request an evidentiary hearing pursuant to Federal Rule of Criminal Procedure 42(b) before the Court holds Alwawi in criminal contempt and orders his incarceration. (*Id.* at 2-3.) Unlike Plaintiff, Defendants have not filed any evidence in support of their arguments. (*Id.* at 1-3.)

## LEGAL STANDARD

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."[3] *Spallone v. United States*, 493 U.S. 265, 276 (1990); *see also United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) ("A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." (citation omitted)). Civil contempt is distinguished from criminal contempt because "civil contempt may be imposed if proven by clear and convincing evidence, and without the full criminal procedural process, while criminal contempt may be imposed only after the subject of the contempt proceeding has been afforded the protections that the Constitution requires of such criminal proceedings[.]" *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016) (citations and internal quotation marks omitted). The purpose of criminal contempt is to either punish a party, vindicate the court's authority, or deter future misconduct, whereas civil contempt sanctions are designed to coerce compliance with a court

---

[3] Plaintiff does not specify whether it seeks a finding of criminal or civil contempt, but the Court reads Plaintiff's motion as a motion for civil contempt because Plaintiff asks the Court to impose a number of penalties against Defendants to coerce compliance with the Court's orders, (R. 108, Reply at 9). *See Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016) (noting that a finding of criminal contempt requires the typical constitutional protections and procedures afforded to defendants in criminal cases); *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) ("Sanctions for civil contempt are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy.").

7

order or compensate a party for losses resulting from another party's failure to comply with a court order. *In re Grand Jury Proceedings*, 280 F.3d 1103, 1107 (7th Cir. 2002). For example, sanctions that are designed to lapse once the contemnor purges his or her contempt such that the contemnor "carries the keys of his prison in his own pocket" are civil contempt sanctions. *Id.* at 1107. Because coercive sanctions "are generally reserved for those case[s] involving current or continuing violations," *E.E.O.C. v. Dial Corp.*, No. 99 C 3356, 2001 WL 1945089, at *5 (N.D. Ill. Dec. 6, 2001), a civil contempt sanction may transform into a criminal contempt sanction if there is "no reasonable possibility that the contemnor would ever comply with the court's demands." *In re Grand Jury Proceedings*, 280 F.3d at 1109. "[I]rrespective of the nature of the civil contempt, whether it be coercive or remedial, any sanction imposed by the court must be predicated on a violation of an explicit court order." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999).

To prevail on its motion to hold Defendants in contempt, Plaintiff bears the burden of proving all of the following elements by clear and convincing evidence: (1) the Court's TRO and final judgment set forth an unambiguous command; (2) Defendants violated that command; (3) Defendants' violation was significant, "meaning [they] did not substantially comply" with the Court's orders; and (4) Defendants failed to take steps to "reasonabl[y] and diligently comply" with the Court's orders. *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008). Plaintiff must set out "with particularity the misconduct complained of" as well as any "damages occasioned" by Defendants' misconduct and such evidence as to the amount of damages that may be available to Plaintiff. N.D. ILL. L.R. 37.1(a). If Defendants "put[] in issue the alleged misconduct giving rise to the contempt proceedings or the damages thereby occasioned, [Defendants] shall upon demand . . . be entitled to have oral evidence taken[.]" N.D.

8

ILL. L.R. 37.1(b); *see also Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) ("Due process requires a district court to resolve relevant factual disputes—allowing discovery and holding an evidentiary hearing if necessary—in a civil contempt proceeding.").

Parties that have infringed trademarks must "keep a safe distance from the margin line between compliance with the order and a violation." *Baldwin Piano, Inc. v. Deutsche Wurlitzer, GmbH*, No. 03 C 2105, 2004 WL 1323940, at *2 (N.D. Ill. June 15, 2004). Defendants' violations need not be willful for the Court to hold them in contempt; instead, Defendants may be held in contempt if they have not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Select Med. Corp. v. Cash Flow Consultants, Inc.*, No. 09 C 8066, 2010 WL 2891639, at *1 (N.D. Ill. July 20, 2010). "Courts have broad discretion to fashion contempt remedies and the particular remedy chosen should be based on the nature of the harm and the probable effect of alternative sanctions." *F.T.C. v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009) (citation and internal quotation marks omitted). To that end, the Court will narrowly tailor any remedy so that the relief provided is coercive and not punitive. *See Barker ex rel. N.L.R.B. v. Latino Exp., Inc.*, No. 11 C 2383, 2012 WL 2522287, at *7 (N.D. Ill. July 2, 2012) ("Although such relief would be coercive, rather than punitive, we believe that the relief provided below is more narrowly tailored to the respondents' violations."), *aff'd sub nom.*, *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*, 776 F.3d 469 (7th Cir. 2015).

## ANALYSIS

Plaintiff presents evidence showing that aside from Alwawi's submission of falsified documents to this Court earlier in this case that caused him to be sanctioned, (R. 51, Min. Entry), Alwawi continues to disregard this Court's authority and attempts to avoid the effect and intent of the Court's orders. The Court is troubled by evidence that Defendants represented themselves

as the owners of the ANESTHESIA trademarks and sold large quantities of counterfeit ANESTHESIA products to retailers with U.S. addresses while the TRO was in effect. (R. 102-1 at 11, Jan. 2, 2018, Invoice; R. 102-1 at 9, Dec. 11, 2017, Invoice; R. 110, Jamal Decl. at 2.) The Court is also troubled by evidence showing that Defendants have been using their assets to run a competing contact lens business instead of paying the judgment in this case, and that they are making contact lens products available for purchase in the United States bearing Plaintiff's AZURE and AMARILLO trademarks. (R. 98-4, Defs.' Interr. Resps. at 5-6; R. 63-6 at 2-3, June 18-19, Emails and Invoices; R. 102-3, Beauteuoslenses.com at 3, 12; R. 102-4 at 5-11, Fekman.com; R. 112, Ashkanani Decl. at 2-4.)

Defendants' response to Plaintiff's contempt motion is likewise disturbing and further indicative of Defendants' cavalier attitude toward this Court's orders. Defendants argue that although they sold counterfeit ANESTHESIA products to retailers with U.S. addresses, "the contact products at issue . . . never set foot on U.S. soil." (R. 106, Resp. at 2.) The Court's TRO and final judgment plainly prohibit Defendants from selling or promoting counterfeit products in the United States, regardless of whether those products "set foot on U.S. soil." (*Id.*) Specifically, the TRO provided that Defendants are "temporarily enjoined and restrained from claiming ownership and/or promoting the ANESTHESIA USA contact lens products for sale in the United States." (R. 21, TRO at 21.) The final judgment unequivocally provides that Defendants are permanently enjoined from using Plaintiff's trademarks "in connection with the promotion, advertisement, offering for sale, or sale of products or services in a manner affecting interstate commerce" within the United States. (R. 79, Final J. at 8-9.)

Defendants' specious arguments in response to the motion are amplified by Defendants' failure to respond to or provide evidence rebutting Plaintiff's claims that Defendants have assets

to partially satisfy the judgment in this case, have not truthfully reported their assets in federal tax returns, and continue to offer counterfeit products for sale in the United States through online vendors. (R. 106, Resp. at 1-3.) Upon review of the evidence submitted, the Court finds the assertions in Defendants' response to be entirely lacking in support, including Defendants' claims that they do not have "resources to satisfy any portion of the judgment" and that they have complied with their post-judgment discovery obligations, (*id.* at 2). *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 287 (7th Cir. 2014) ("The defendants may think that a mere assertion of inability to pay made in an affidavit (and thus under oath) precludes a finding of contempt. Not so."). Accordingly, the Court concludes that Plaintiff has met its burden to show that Defendants are in civil contempt of the Court's orders because it has presented clear and convincing evidence that: (1) the TRO and final judgment set forth an unambiguous command that Defendants are to refrain from promoting counterfeit products for sale in the United States and pay the damages awarded to Plaintiff; (2) Defendants violated that command by infringing Plaintiff's trademarks and refusing to pay the judgment in this case; (3) their violations were significant; and (4) they failed to take steps to reasonably and diligently comply with the Court's orders. *See Prima Tek II, L.L.C.*, 525 F.3d at 542.

The Court has broad discretion to fashion a remedy that coerces Defendants' compliance with the Court's orders. *See Trudeau*, 579 F.3d at 771. Plaintiff seeks severe sanctions against

Defendants: Alwawi's incarceration,[4] confiscation of his U.S. passport, referral of this case to the U.S. Attorney's office and U.S. Internal Revenue Service ("IRS") for criminal investigation, an accounting and order setting a payment schedule, and an immediate payment of $500,000. (R. 101, Mot. at 9; R. 108, Reply at 8-9.) In an effort to narrowly tailor the remedy to the violation, the Court grants an accounting and further discovery of Defendants' assets as well as discovery relating to any steps that Defendants have taken to avoid the Court's orders and jurisdiction. *See Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 28 (7th Cir. 1977) (ordering an accounting as a remedy for civil contempt); *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 546-47 (N.D. Ill. 2008) ("[A] district court [has] broad discretion to fashion an appropriate coercive remedy in a case of civil contempt, based on the nature of the harm and the probable effect of alternative sanctions." (citation omitted)).

The Court orders that Defendants shall, within 30 days of the date of this order, produce to Plaintiff: all documents relating to any entities or persons Defendants do business with or to whom they have transferred any assets; all of Defendants' accounting records from January 1, 2017, to present; all of Defendants' banking records—including bank and credit or debit card statements—from January 1, 2017, to present; all of Defendants' tax returns for 2017 (Alwawi's *and Anesthesia USA, Inc.'s* tax returns, if any have not yet been produced); all documents relating to any trademark or intellectual property filings that were filed with any government

---

[4] The Court notes that Defendants are wrong in presuming that incarceration is only a criminal contempt sanction. (*See* R. 106, Resp. at 2-3.) The Court may order Alwawi's incarceration to coerce his compliance with the Court's orders as a civil contempt sanction and without the procedures applicable to criminal contempt sanctions. *See Teledyne Techs., Inc. v. Shekar*, No. 15-CV-1392, 2015 WL 3799559, at *12 (N.D. Ill. June 17, 2015) ("Coercive imprisonment is . . . an available remedy for civil contempt."), *aff'd*, 739 F. App'x 347 (7th Cir. 2018); *United States v. Richmond*, No. 02-CV-1559, 2004 WL 2284286, at *2 (N.D. Ill. July 28, 2004) ("Because monetary sanctions alone have previously proven insufficient to bring about Black's compliance with orders of this Court, coercive incarceration is necessary to compel Black's compliance with the March 31st 2004 Installment Payment Order.").

12

organization, whether in the United States or abroad, that were filed by Defendants or Alwawi's brother, Mohammed Alwawi, or any entity owned or operated by Defendants or Mohammed Alwawi; all documents relating to the manufacture, sale, or purchase of Defendants' contact lenses (whether promoted under the ANESTHESIA brand, BEAUTEOUS brand, or any other brand) from January 1, 2017, to present; all documents relating to BEAUTEOUS contact lenses or any other business that Defendants have obtained revenue from or plan to obtain revenue from; and all documents relating to Alwawi's international travel over the past two years.[5]

In addition to this Court-ordered discovery, Plaintiff may also serve Defendants with a request for production of documents, requests for admission, up to 25 interrogatories, and take Alwawi's deposition during this 30-day period. This discovery shall be issued or noticed within the next 14 days, and Defendants shall respond to the discovery requests and complete all discovery within the time mandated by the Federal Rules of Civil Procedure or 30 days of the date of this order, whichever comes earlier.

Within 40 days after the date of this order, Alwawi shall file a sworn affidavit, under penalty of perjury, detailing the steps he has taken to comply with this order and his discovery obligations, which shall include a narrative explaining what he has done with revenues he obtained from selling ANESTHESIA contact lenses, BEAUTEOUS contact lenses, and the BEAUTEOUS contact lens business, if he did in fact sell that business to another person or entity. *See, e.g., Barker ex rel. N.L.R.B. v. Latino Exp., Inc.*, No. 11 C 2383, 2012 WL 2522287, at *9 (N.D. Ill. July 2, 2012) (ordering the contemnors to "file an affidavit with the court setting

---

[5] The Court concludes that Alwawi's history of international travel is relevant to shed further light on his business activities and assets within the United States and abroad, and to ascertain whether Alwawi is at risk of fleeing the United States to avoid the Court's orders. *See Herbstein v. Bruetman*, 241 F.3d 586, 588 (7th Cir. 2001) (noting that confiscation of a passport as a remedy for contempt might be available if the defendant "has demonstrated a propensity to leave the country when the heat is turned up").

forth the specific steps they have taken to comply [with] our contempt order"). Alwawi shall also certify in this affidavit that he has provided all responsive documents in his custody or control. If there are certain responsive documents or information that Alwawi knows exists but are not within Alwawi's custody or control, Alwawi shall state in the affidavit where Plaintiff may find such information if Alwawi knows or can reasonably discover where such information is located. Finally, Alwawi shall certify in the affidavit that he is in compliance with the Court's order of final judgment. *See id.*

The other remedies that Plaintiff requests are denied without prejudice, and Plaintiff may renew its requests for these remedies upon further evidence that one or more of these remedies are warranted.[6] Turning first to Plaintiff's request to incarcerate Alwawi, the Court will not incarcerate Alwawi pursuant to its civil contempt authority for violations of the TRO unless they are continuing, because any such sanction would serve only to punish Alwawi for past violations of the Court's orders rather than to purge any current non-compliance. *See In re Grand Jury Proceedings*, 280 F.3d at 1109; *Dial Corp.*, 2001 WL 1945089, at *5. Because there is no evidence that Defendants are still selling or promoting ANESTHESIA products in the United States to Frifay or De La Torre as they did while the TRO was in effect, the Court will not incarcerate Alwawi for such conduct.

The Court also declines to incarcerate Alwawi for his failure to pay amounts toward the final judgment and for selling and promoting BEAUTEOUS products within the United States

---

[6] Local Rule 37.1 requires parties to file a notice of motion or order to show cause instead of a motion for contempt. N.D. ILL. L.R. 37.1(a). The Court notes that Plaintiff has failed to strictly follow the procedures outlined in Local Rule 37.1, but the Court will not require strict compliance with the local rules in the interest of justice. *See Murata Mfg. Co. v. Bel Fuse, Inc.*, 242 F.R.D. 470, 474 (N.D. Ill. 2007) ("An appropriate circumstance for excusing non-compliance with [local] rules is when compliance would have been an exercise in otiosity."). The Court expects Plaintiff to follow the procedures set forth in Local Rule 37.1 if it files another request for civil contempt sanctions.

that bear Plaintiff's AMARILLO or AZURE trademarks. As of now, the record is unclear as to whether Alwawi is still selling or promoting such products and whether he currently has any assets that can satisfy the final judgment in this case. Alwawi represented in his interrogatory responses that he obtained significant revenues from selling counterfeit ANESTHESIA products, but these sales were in 2016 and 2017 and any resulting profits may have since dissipated. (R. 98-4, Defs.' Interr. Resps. at 2-3, 5-6.) The other revenues from sales to Frifay and De La Torre that Plaintiff describes in its motion occurred more than a year ago and might not be at Defendants' disposal. (R. 102-1 at 11, Jan. 2, 2018, Invoice; R. 102-1 at 9, Dec. 11, 2017, Invoice.) The same conclusion applies to funds that Defendants obtained from selling BEAUTEOUS contact lenses as well as funds Defendants obtained from the alleged sale of their BEAUTEOUS contact lens business, as it is not clear whether this sale happened and where the proceeds of that sale are located. (R. 113, Raad Decl. at 2-3 (relying on hearsay for the assertion that Alwawi and his brother sold the BEAUTEOUS contact lens business for $600,000).) Plaintiff must put forth evidence that Defendants have access to these or other revenues and refuse to satisfy the final judgment with these funds before the Court incarcerates Alwawi, because incarcerating Alwawi pursuant to the Court's civil contempt power must be aimed at coercing him into compliance rather than punishing him for a past violation of the Court's orders. *See In re Grand Jury Proceedings*, 280 F.3d at 1109; *Commodity Futures Trading Comm'n v. Nickolaou*, No. 99 C 6425, 2000 WL 1029622, at *9-10 (N.D. Ill. July 26, 2000) (noting that the plaintiff was asking for a sanction of criminal contempt requiring proof beyond a reasonable doubt, because the plaintiff simply wanted the defendant's "apparent dishonesty and disobedience to be punished").

The record is similarly unclear as to whether Defendants are still selling or promoting infringing BEAUTEOUS products bearing the AMARILLO or AZURE trademarks given the evidence that Alwawi may have sold the BEAUTEOUS contact lens business to another person or entity. (R. 108, Reply at 6; R. 113, Raad Decl.) Thus, the Court will not incarcerate Alwawi at this time for his sale of infringing AMARILLO and AZURE products in violation of the Court's final judgment, because it is not yet clear how incarceration will influence his compliance with the Court's orders. *See In re Crededio*, 759 F.2d 589, 592 (7th Cir. 1985) ("The rationale underlying civil contempt is simply that contemnors hold the key of their prison in their own pocket." (citation and internal quotation marks omitted)); *Voso v. Ewton*, No. 16-CV-00190, 2017 WL 2653143, at *1 (N.D. Ill. June 20, 2017) ("Incarceration can only be used to coerce the party to comply with a court order—once the party complies, she must be released."). "Imprisonment for civil contempt is a drastic remedy." *Teledyne Techs., Inc. v. Shekar*, No. 15-CV-1392, 2015 WL 3799559, at *13 (N.D. Ill. June 17, 2015). Defendants, however, "should be under no misapprehension as to the Court's willingness to impose such a remedy since the proceedings have already made clear that it is most likely the only method by which [they] can be motivated to comply." *Id.* Accordingly, the Court may revisit its conclusion regarding Alwawi's incarceration if Plaintiff presents the Court with further evidence of noncompliance with the Court's prior orders or this one.

The Court declines to impose any further monetary obligations or fines on Defendants at this time without further discovery regarding Defendants' assets, because Defendants' failure thus far to pay any part of the sizeable money judgment in this case casts doubt on the coercive value of additional fines or payment obligations. *See Trudeau*, 579 F.3d at 777 (explaining that, in the context of civil contempt, "[a] purgeable sanction is one that allows the contemnor to free

himself of the sanction by committing an affirmative act, namely complying with the court's order." (citation and internal quotation marks omitted)); *United States v. Hawk*, No. 12-3311, 2015 WL 6500920, at *2 (C.D. Ill. Oct. 27, 2015) (declining to issue further monetary sanctions, observing that "[a] monetary fine is unlikely to succeed, given that Defendants continue to accrue liabilities for taxes, penalties and interest without any attempt to pay them"). In the same vein, the Court will not order an immediate payment or impose a payment schedule on Defendants without knowing whether the assets and incoming revenue they have can satisfy the final judgment, because the coercive value of such a payment schedule or immediate payment is unclear at this point. *See Trudeau*, 579 F.3d at 777; *Hawk*, 2015 WL 6500920, at *2. Accordingly, the Court denies without prejudice Plaintiff's request for an immediate payment of $500,000 and a payment schedule.

The remaining remedies that Plaintiff requests—confiscation of Alwawi's passport and referral of this case to the U.S. Attorney's Office and IRS for criminal investigation—are also denied as premature, but they may be renewed if there is additional evidence that warrants these sanctions. Confiscation of a passport as a remedy for contempt is appropriate where the defendant "has demonstrated a propensity to leave the country when the heat is turned up." *See Herbstein v. Bruetman*, 241 F.3d 586, 588 (7th Cir. 2001); *United States v. Anderson*, No. 3:10-510-JFA, 2011 WL 221882, at *14 (D.S.C. Jan. 24, 2011) (explaining that "[w]hile an order to surrender a passport is very rare in civil cases outside the matrimonial context, courts have ordered litigants found to be in contempt to surrender their passport" to secure compliance). There is no clear and convincing evidence before the Court at this time that Alwawi is at risk of fleeing the United States. *See Herbstein*, 241 F.3d at 588; *see also Lightspeed Media Corp.*, 830 F.3d at 508.

As for Plaintiff's request that this matter be referred for criminal investigation, while the discrepancy between the revenues described in Alwawi's interrogatory responses and his federal tax returns are alarming, (*compare* R. 109-7 at 1-2, Alwawi 2017 Fed. Tax Return), *with* (R. 98-4, Defs.' Interr. Resps. at 5-6), the Court will not refer this matter for criminal investigation without a more complete picture of Defendants' assets and tax returns.[7] The Court, therefore denies without prejudice Plaintiff's request for referral of this case to the U.S. Attorney's Office and IRS for criminal investigation.

## CONCLUSION

For the foregoing reasons, Plaintiff's pending motions for contempt (R. 74; R. 101), are GRANTED in part and DENIED in part as set forth herein. Within 30 days of the date of this order, Defendants shall produce the documents to Plaintiff that are described in this order. Plaintiff is granted leave to seek additional discovery as set forth herein. Within 40 days of the date of this order, Alwawi shall file the affidavit described in this order. The parties shall appear for a status hearing on February 26, 2019, at 9:45 a.m.

ENTERED: 

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: January 8, 2019**

---

[7] The Court also reserves referral of this matter for criminal investigation because separate, additional grounds for referral to the U.S. Attorney's office—namely, criminal contempt—might arise if Defendants continue violating the Court's orders. *See, e.g., In re Contempt Proceedings for Bess*, No. 11-MISC-35, 2011 WL 4916437, at *2 (E.D. Wis. Oct. 17, 2011) ("[T]he Court refers this matter to the United States Attorney for the Eastern District of Wisconsin for consideration of whether to pursue criminal contempt charges under 18 U.S.C. § 401 against Gomez Bess and Fromstein based on their conduct[.]").